UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RON SHAHAR, et al., <br>     Plaintiffs, <br><br> v. <br><br> VENTRIS C. GIBSON, et al., <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> )    C.A. No. 24-cv-448-MRD-PAS <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

Plaintiffs Ron Shahar and David Parsons ("Plaintiffs") bring this action seeking to recover $13,072,954 from Royal Mint of the United Kingdom ("UK Mint"), their individual officers and agents, and from officers and agents employed by the United States Mint ("US Mint") (collectively, "Defendants").[1]  ECF No. 23.  Pending before the Court are two Motions to Dismiss the Amended Complaint, ECF Nos. 25-26, and Plaintiffs' Motion for Default Judgment as to Defendant Larry Goldberg. ECF No. 33.

The Defendants seek dismissal under several alternative theories, including pursuant to Rule 12(b) for lack of subject matter jurisdiction, personal jurisdiction, improper venue, failure to state a claim, and issue preclusion.  For the reasons set

---

[1] The United States is not a named defendant in the Amended Complaint but responds on behalf of the individual federal defendants, with the exception of Defendant Goldberg.  *See* ECF No. 26.  Although U.S. Mint is mentioned in the allegations, the operative claims are asserted solely against Defendants Ventris C. Gibson, Joel B. Christian, and Richard R. Rubidoux.

forth herein, the Court GRANTS Defendants' Motion to Dismiss each claim for both lack of subject matter jurisdiction and failure to state a claim.

I.  BACKGROUND

The Court draws the facts, accepted as true, from Plaintiffs' Amended Complaint and supporting attachments. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The U.S. Mint's Redemption Program, established in 1911, allowed individuals and businesses to exchange damaged coins for their face value, funded through the Mint's self-sustaining Public Enterprise Fund.  ECF No. 23 ¶ 18; *see* 31 U.S.C. § 5136.  As counterfeit concerns grew, the U.S. Mint suspended the Program in 2015, briefly resumed it, and then permanently terminated it in 2024 due to the continued risk of fraud.  *Id.* ¶ 29.

Shahar, who submitted damaged coins sourced from Chinese recycling factories for over twenty years, alleges that the U.S. authorities failed to pay for several shipments of seized coins.  *Id.* ¶¶ 31–33.  These included (1) the "Five Crates Shipment" seized in 2019 and later forfeited as counterfeit, (2) a "Portland Mint Shipment" accepted but allegedly unpaid, and (3) a "Bing Li Lin Shipment" later seized under a federal warrant.  *Id.*  Each shipment has been subject to separate litigation.[2]  *Id.*  Plaintiffs allege that U.S. officials falsely accused them of importing

---

[2] The "5 Crates Shipment" was the subject of a 2020 forfeiture action in the Central District of California, where the Court entered summary judgment for the United States, after finding the coins counterfeit and ordering forfeiture.  *See United States v. 5 Crates of Counterfeit Coins*, No. 2:20-cv-8487, ECF No. 68 (C.D. Cal. Dec. 5, 2022), aff'd, No. 23-55075, 2023 WL 6474456 (9th Cir. July 3, 2023).  Before this Court, Plaintiffs nonetheless allege the Government "lied about the authenticity" of the coins.  ECF 23 ¶ 31.  The "Portland Mint Shipment" is the subject of separate,

2

counterfeit coins and that the U.S. Mint coordinated with international counterparts, including the Royal Mint, to restrict coin imports from China. *Id.* ¶¶ 21–25, 30.

The Royal Mint, a UK entity belonging to the Crown, manufactures coins for the UK and other countries. *Id.* ¶ 6. Plaintiffs allege that the Royal Mint and its executives conspired with the U.S. Mint to block coin imports by sharing information through international financial task forces.[3] *Id.* They allege that their coin shipments to the UK, valued at $800,000, were partially withheld or wrongly deemed counterfeit. *Id.* ¶¶ 39–42. Shahar states that officials Mills and Loveridge informed him the Mint no longer accepted coins and was justified in withholding payouts.[4] *Id.* ¶¶ 39,41. Plaintiff Parsons alleges he was unable to redeem $875,000 worth of coins after the Royal Mint changed its policies and that his bank accounts were closed as a result. *Id.* ¶¶ 60, 64.

The Amended Complaint alleges the following causes of action: (1) return of property under Rule 41(g); (2) a Bivens claim; (3) fraud and conversion; (4)

---

ongoing litigation in the Court of Federal Claims over the Mint's alleged failure to pay $8.5 million for redeemed coins. *See The Portland Mint v. United States*, No. 1:20-cv-518-MBH, ECF No. 86 (Fed. Cl. Sept. 3, 2024). Finally, the "Bing Li Lin Shipment" is currently the subject of litigation in the Eastern District of Texas, regarding the seizure of coins valued at $106,704. *See Lin v. United States*, No. 4:22-cv-55-SDJ-BD, ECF No. 46 (E.D. Tex. Sept. 8, 2023). Plaintiffs are not parties to the last two cases.

[3] Plaintiffs allege that, after the UK Mint replaced the one-pound coin, Sarah Jones assured Parson's business would normalize. Relying on this, he bought $875,000 in coins from the Far East. *Id.* ¶ 59. Later, his UK bank closed his account, did not allow him to open new accounts, and the Mint excluded wholesalers from its damaged coin program, leaving him unable to exchange the coins. *Id.* ¶¶ 64–65

[4] Defendant Mills and Defendant Loveridge are executives at UK Mint and were responsible for issuing the British pounds, the program for redemption of coins, and commercial activity to consumers. ECF 23 ¶ 10.

3

cartelization and abuse of monopoly; (5) libel and defamation; (6) intentional damage to contracts; (7) unjust enrichment; (8) trespass to chattels; and (9) misrepresentation. *Id.* ¶¶ 78–130. Plaintiffs seek over thirteen million dollars in damages, alleging that the U.S. and UK Mints conspired to end their coin redemption businesses through false accusation, unlawful seizures, and coordinated policy changes. *Id.* ¶¶ 1, 130.

## II. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. A motion to dismiss brought based on the Foreign Sovereign Immunities Act ("FSIA") is considered a motion to dismiss under Rule 12(b)(1). *See Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 489 (1983) (noting that the FSIA deprives federal courts of subject matter jurisdiction over suits against a foreign state unless the action falls within one of the FSIA's enumerated exceptions). "When a defendant moves to dismiss for lack of federal subject matter jurisdiction, [ ] 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss." *Johansen*, 506 F.3d at 68. On a Rule 12(b)(1) motion, the district court must accept the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *Sanchez ex rel. D.R.S. v. U.S.*, 671 F.3d 86, 92 (1st Cir. 2012). However, a court "may

4

consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

### B. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists when the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A pleading that offers "naked assertion[s]" without "further factual enhancement" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

## III. DISCUSSION

While Plaintiffs' prior litigation against the Government does not preclude them from bringing new claims, this action reiterates the same or substantially similar allegations previously raised in earlier lawsuits filed in different jurisdictions.[5] Although courts afford pro se litigants some leniency, *Rodi v. S. New*

---

[5] *See* Opinion, *Shahar v. U.S. Dep't of Treasury*, 2:16-cv-270, ECF No. 36 (E.D. Pa. Mar. 20, 2017) (dismissing claims against the United States and federal agencies and officials brought under the APA, the Fourth, and Fifth Amendments, 42 U.S.C. § 1983, and the Mandamus and Venue Act and denying leave to amend on grounds of futility), *appeal dismissed*, No. 17-2131 (3d Cir. Aug. 15, 2017); Complaint, *Shahar v. U.S. Dep't of Treasury et al.*, 2:20-cv-3003, ECF No. 1 (C.D. Cal. Mar. 31, 2020) (voluntarily dismissed to permit Shahar to file a claim in the *5 Crates* matter (*see id.* ECF No. 38)); Order Granting Summary Judgment as to Forfeiture, *United States v.*

*Eng. Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004), such status does not exempt a party from complying with the Federal Rules of Civil Procedure. The Court will therefore disregard plaintiffs' conclusory assertions and consider only those arguments supported by well-pleaded facts and applicable law.

A.   Sovereign Immunity under the FSIA

Defendant UK Mint argues that this Court lacks subject matter jurisdiction under the FSIA because UK Mint is owned by the sovereign Government of the UK and is therefore immune from suit in the United States. ECF No. 25 at 1. Moreover, Defendant UK Mint alleges that individual defendants Andrew Mills and Mark Loveridge are also immune from this suit under the FSIA. *Id.* at 33–34.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The FSIA defines "foreign state" to include "a political subdivision … or an agency or instrumentality of a foreign state," and further specifies that an "agency or instrumentality of a foreign state" includes, *inter alia*, "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(a), (b)(2). The FSIA "establishes a presumption of foreign sovereign immunity from the jurisdiction of the courts of the United States unless one of its enumerated exceptions to immunity applies." *Universal Trading & Inv. Co. v. Bureau for Representing Ukr. Interests in Int'l and Foreign Courts*, 727 F.3d 10, 16 (1st Cir.

---

*5 Crates of Counterfeit Coins*, 2:20-cv-8487, ECF No. 68 (C.D. Cal. Dec. 5, 2022), aff'd, No. 23-55075, 2023 WL 6474456 (9th Cir. July 3, 2023).

2013). Absent the applicability of any FSIA exceptions, the district court is without subject matter jurisdiction and personal jurisdiction over a plaintiff's claims. *Verlinden B.V.*, 461 U.S. at 485 n.5. This immunity extends to foreign officers and agents when the foreign instrumentality is a required party or when the action against the agent in his official capacity should be treated as an action against the foreign state itself as the real party in interest. *See Samantar v. Yousuf*, 560 U.S. 305, 325 (2010).

"The First Circuit has not directly addressed the burdens of the parties with respect to an FSIA action." *Universal Trading & Inv. Co.*, 727 F.3d at 17. Nevertheless, it has suggested that a burden-shifting framework is appropriate. *See id.* (applying the burden-shifting framework set out in *Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 241 (2d Cir. 2002)). A defendant seeking dismissal for lack of subject matter jurisdiction under the FSIA must first present a prima facie case that it is a foreign sovereign. *Virtual Countries, Inc.*, 300 F.3d at 241. Once the defendant meets this threshold, the burden of production is on the plaintiff to establish that one of the exceptions to immunity applies (e.g., terrorism exception or commercial exception). *Id.*; *see also* 28 U.S.C. §§ 1604, 1605, 1605A. The ultimate burden of persuasion, however, rests with the foreign sovereign to show that none of the pertinent exceptions apply. *Id.*

Plaintiffs contend that UK Mint does not act as a regulator of a market, but in the manner of a private player within it, and therefore the foreign sovereign's actions are "commercial" for the purposes of the FSIA. ECF No. 23 ¶ 6. To support this

7

contention, Shahar references UK Mint's correspondence where they state they are a commercial entity. *Id.* As UK Mint indicates, undisputed by Plaintiffs, UK Mint is wholly owned by the Government of United Kingdom and therefore meets the definition of "agency or instrumentality." 28 U.S.C. § 1603(b). Plaintiffs state in their Amended Complaint that "Defendant ROYAL MINT OF THE UNITED KINGDOM is a UK entity belonging to the Crown." ECF No. 23 ¶ 6. This allegation effectively satisfies UK Mint's initial burden of establishing immunity and the burden then shifts to Plaintiffs to show that one of the exceptions to immunity applies.

Plaintiffs, however, have not argued that any of the exceptions to immunity apply. Instead, Shahar reiterates his assertion that Royal Mint is a "commercial entity" with no evidence other than a reference to a letter written by the Royal Mint and a personal LinkedIn post from Defendant Loveridge. ECF No. 29 ¶¶ 86–87. In the letter, Shahar states that UK Mint admits that its officers told him and Parsons that the Mint is a commercial entity. *Id.* ¶ 86. Defendant Loveridge's LinkedIn profile states that he is the "[m]ain point of contact with Her Majesty's Treasury for cash related activities and for creation and implementation of policies and new initiatives," that he is the "lead contact with the UK financial industry for the Royal Mint, and he "work[s] across international borders to understand payment policy and cash management in different parts of the world." *Id.* ¶ 87. This is far from enough and fails to supplement a potential yet undeveloped immunity exception argument.

As such, Plaintiffs fail to establish the applicability of any of the commercial activity exceptions or any other exception under the FSIA to their claims and

8

therefore fail to meet his burden of production. *Universal Trading & Inv. Co.*, 727 F.3d at 17. Similarly, they do not dispute that Defendants Mills and Loveridge are agents of UK Mint.

Since none of the exceptions to foreign sovereign immunity under the FSIA apply, there is no subject matter jurisdiction over the UK Mint and its agents. All claims against UK Mint and Defendants Mills and Loveridge are dismissed.

### B. U.S. Federal Defendants

Plaintiffs seek monetary relief under various claims, including a return of property claim under Rule 41(g) of the Federal Rules of Criminal Procedure from the individual federal defendants. The U.S. argues that all claims against the individual federal defendants are barred by sovereign immunity because Plaintiffs seek only money damages from the Government and waiver of sovereign immunity does not apply. ECF No. 26 at 3–4. Finally, the U.S. contends that Plaintiffs have not pled any facts connecting the federal defendants to the alleged constitutional violations and thus have failed to state a viable *Bivens* claim. *Id.* at 23–24.

#### 1. Sovereign immunity

Sovereign immunity bars suits against the United States, its agencies, and its employees sued in their official capacities, absent a waiver. *FDIC v. Meyer,* 510 U.S. 471, 475, (1994). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation omitted).

9

In his opposition to the federal defendants' Motion to Dismiss, Shahar relies on the premise that U.S. Mint is a commercial entity which therefore bars them from claiming sovereign immunity. ECF No. 29 ¶ 86. To not waive sovereign immunity in this context, Plaintiff argues, would be an absurdity and leave individuals without a remedy. To support his contention, he directs the Court to the Tucker Act, which he states is evidence that the U.S. Government waived its immunity as to certain commercial actions. Shahar's primary argument is that his demand for payment from the U.S. Mint for the Portland Mint shipment is essentially a claim to enforce contractual rights against the United States. *Id.* ¶ 62. Shahar's logic regarding the Tucker Act in this context is misguided, and for the following reasons, unavailing.

The U.S. Mint is an official Government bureau under the jurisdiction of the Department of Treasury and is thereby immune from lawsuits for money damages by way of sovereign immunity. *See* Coinage Act of April 2, 1792. Where sovereign immunity has been explicitly waived, that waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. Congress has waived the United States' sovereign immunity in very narrow circumstances. The Tucker Act grants the Court of Federal Claims exclusive jurisdiction over any action "upon any express or implied contract with the United States, or for liquidated or unliquidated damages." 28 U.S.C. § 1491; *Zelman v. Gregg*, 16 F.3d 445, 446 (1st Cir. 1994) ("[F]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations.") Similarly, though not the basis of Plaintiffs' claims, the Federal Tort Claims Act (FTCA) is a "limited waiver" of

10

immunity for a federally deemed employee's tortious acts committed within the scope of their office or employment. 28 U.S.C. § 2679; *Abreu v. United States*, 468 F.3d 20, 23 (1st Cir. 2006). This case falls clearly outside the scope of both the Tucker Act and the FTCA. While Plaintiffs' suit asserts a variety of torts (e.g., fraud, libel), an antitrust-type claim based on "cartelization and abuse of monopoly," and a claim for unjust enrichment, these are all common-law claims for which the U.S. has not waived immunity to suit.[6] *See Sanchez v. United States*, 740 F.3d 47, 50 (1st Cir. 2014) (ruling that state-law claims against the United States or its agencies are barred absent an express waiver of sovereign immunity).

Thus, because Plaintiffs seek money damages and no waiver applies, sovereign immunity applies to both the U.S. and the federal defendants.

### 2. Rule 41(g) claim

In their Amended Complaint, Plaintiffs bring a claim for "return of property," pursuant to Fed. R. Crim. P. 41(g), in an attempt to invoke the equitable jurisdiction of the Court. Under Rule 41(g), "[a] person aggrieved … by the deprivation of property may move for the property's return." The rule recognizes that the federal courts have

---

[6] The FTCA also expressly exempts a majority of the named torts in Plaintiffs' Amended Complaint from the sovereign immunity waiver. *See* 28 U.S.C. § 2608(h) (exempting "[a]ny claim arising out of … libel, slander, misrepresentation, deceit, or interference with contract rights"). For the other tort claims (trespass to chattels and conversion), the FTCA only authorizes suit against the United States if a plaintiff has first exhausted his or her administrative remedies with the appropriate federal agency. *See* 28 U.S.C. §§ 2674, 2679, 2675(a). For any torts not expressly exempted by the FTCA, there is nothing in the amended complaint alleging that Plaintiffs filed an administrative claim with the Department of Treasury or U.S. Mint. *See* 28 U.S.C. §§ 2674, 2679, 2675(a) (stating that the FTCA only authorizes suit against the U.S. if a plaintiff has first exhausted his or her administrative remedies).

11

equitable jurisdiction to order the return of property. *Gulf Coast Pharm. Plus v. United States*, 22-cv-263, 2023 WL 3099873, at *3 (S.D. Miss. Apr. 26, 2023); *Matter of Ninety-One Thousand Dollars in U.S. Currency*, 715 F. Supp. 423, 427 (D.R.I. 1989) ("federal courts have variously found the authority to hear pre-indictment motions for return of property not only in the statutory grant of jurisdiction embodied in Rule 41(e) but also in the longstanding, non-statutory doctrine of equitable or 'anomalous' jurisdiction ....").[7]  A district court must, however, exercise its equitable jurisdiction with due "caution and restraint."  3A Charles A. Wright et al., Federal Practice and Procedure § 690 (4th ed. 2008).  To this Court's knowledge, no criminal charges have been brought against either plaintiff so the Court declines Plaintiff's invitation to exercise equitable jurisdiction. Plaintiffs' Rule 41(g) claim is dismissed.

### 3. *Bivens* claim

Plaintiffs also assert a *Bivens* claim against all federal defendants acting under color of law, alleging a due process violation under the Fifth Amendment, an unreasonable search and seizure in violation of the Fourth Amendment, and unconstitutional discrimination based on Plaintiffs' association with Chinese coin dealers and traders.

"The *Bivens* doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials *in their individual capacities*."  *DeMayo v. Nugent,* 517 F.3d 11, 14 (1st Cir. 2008)

---

[7] After the 2002 amendments to Rule 41, "[w]hat was formerly Rule 41(e) is now found at Rule 41(g) with minor stylistic changes." *United States v. Cardona-Sandoval*, 518 F.3d 13, 17 (1st Cir. 2008).

(emphasis added). To successfully bring a *Bivens* claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiffs make only a general allegation that the individual defendants acted within a grand scheme to sabotage the business of coin-importers from China. They have not propounded any facts (or facts from which a reasonable inference could be made) that any of the three named federal defendants conspired with each other, let alone any facts from which it could reasonably be inferred that racial or class-based animus formed the basis of a conspiracy. Plaintiffs allege that they suffered from racial profiling based on their association with Chinese traders and dealers and that defendants conduct was predicated on stereotypes of and prejudice against Chinese people. ECF No. 23 ¶ 83.

Finally, Plaintiffs fail to set forth any facts whatsoever that would raise an inference that the U.S. Mint and the individual federal defendants schemed with other Mints to fabricate probable cause for warrants, to ignore proper notices, and to avoid submitting the coins for testing with a bona fide and neutral metallurgist. As unsubstantiated allegations, Plaintiffs' Amended Complaint fails.

## IV.   CONCLUSION

The Court finds that Plaintiffs' Amended Complaint does not assert any claims that may proceed against any of the Defendants. For the reasons set forth above, the Motions to Dismiss (ECF Nos. 25, 26) are GRANTED, and all claims are dismissed for lack of subject matter jurisdiction or failure to state a claim. Plaintiffs'

13

Motion for Default Judgment against Defendant Goldberg is DENIED without prejudice as premature.[8]

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

December 23, 2025

---

[8] Plaintiffs have not sought or obtained a clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and thus failed to comply with D.R.I. LR Cv 55.